2011 BNH 004

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                                Bk. No. 09-13578-JMD
                                                                      Chapter 13
Robert S. McGrahan,
     Debtor


*Raymond J. DiLucci, Esq.*
*Raymond J. DiLucci, P.A.*
*Concord, New Hampshire*
*Attorney for Debtor*

*Peter C.L. Roth, Esq.*
*Senior Assistant Attorney General*
*Concord, New Hampshire*
*Attorney for New Hampshire Department of Health and Human Services*

## MEMORANDUM OPINION

### I. INTRODUCTION

     Robert S. McGrahan (the "Debtor") filed an amended motion to modify his confirmed chapter 13 plan (Doc. No. 53) (the "Motion") pursuant to 11 U.S.C. § 1329.  The plan modification seeks to reduce the allowed claim held by the New Hampshire Department of Health and Human Services Division of Child Support Services (the "DHHS") to account for federal income tax refunds that were seized and applied towards the claim.  DHHS filed a response to the Motion requesting a ruling by the Court that the modified plan, in its current form, does not affect its ability to intercept tax refunds to apply to any child support arrearage.  This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States

Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).

This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. BACKGROUND

The Debtor filed for relief under chapter 13 on September 17, 2009. On January 19, 2010, the Debtor filed his first amended chapter 13 plan (Doc. No. 17) (the "Plan"). The Plan listed DHHS as a creditor holding a $13,000 claim for unpaid child support. As required by § 1322(a)(2), the Plan paid DHHS's claim in full through monthly installments and included the following provision:

> The Internal Revenue Service is seizing Income Tax Refunds to pay Child Support Arrears. The Proof of Claim of NH DHHS Dept. of Child Services will be decreased annually to reflect the amounts seized.

The Plan was confirmed on January 22, 2010 (Doc. No. 19). On March 17, 2010, DHHS timely filed a proof of claim. No objection was filed to the proof and on July 19, 2010, the Court entered an order allowing the claim of DHHS in the amount of $13,862 (Doc. No. 24).

DHHS intercepted tax refunds on April 23, 2010, and November 5, 2010, and applied the funds received to its prepetition child support arrears claim. However, DHHS did not amend its proof of claim. Consequently, the chapter 13 trustee continued to make payments to DHHS based on its allowed claim, without accounting for the payments received from intercepted tax refunds.

On October 14, 2010, the Debtor filed a motion to modify the plan (Doc. No. 32). In the motion to modify, the Debtor increased DHHS's arrearage claim to the amount of the allowed claim, but removed the provision that allowed the seizure of tax refunds. The Court granted the

motion to modify on November 5, 2010 (Doc. No. 38) (the "Modified Plan").  On November 15, 2010, DHHS filed a motion to reconsider the order granting the motion to modify (Doc. No. 41).  The Debtor objected to the motion to reconsider (Doc. No. 48).

In his objection, the Debtor claimed that seizure of the tax refunds would be burdensome on the Debtor and the Court because DHHS had not amended its claim to reflect the application of seized refunds.  DHHS disclaimed responsibility to notify either the Debtor or the chapter 13 trustee about the application of seized income tax refunds.  The Debtor explained that because DHHS refused to amend its claim the confirmed plan would need to be modified on an annual basis to prevent overpayment.  DHHS argued that they could intercept tax refunds under the exception to the automatic stay in § 362(b)(2)(F), whether the Modified Plan provided for it or not.  On December 1, 2010, the Court denied the motion to reconsider as moot because according to DHHS, it could intercept tax refunds regardless of the terms of the Modified Plan (Doc. No. 50).  However, the Court did not rule on the merits of DHHS's assertion that it had a <u>right</u> to intercept tax refunds despite the absence of a provision in the Modified Plan permitting such action.  The order approving the Modified Plan became final on December 15, 2010.

On November 23, 2010, prior to the Court's ruling on DHHS's motion to reconsider, the Debtor filed another motion to modify the plan (Doc. No. 47), which was withdrawn on December 15 and replaced with the Motion and its accompanying proposed modified plan (the "Proposed Modified Plan").  The Motion seeks to reduce DHHS's arrearage by $4,348 to account for the creditor intercepting the Debtor's federal income tax refunds.  In its response (Doc. No. 57), DHHS did not object to the reduction of its claim, but requested that either (1) the Debtor amend the Proposed Modified Plan to provide for tax refund intercepts or (2) the Court

3

enter an order stating the Proposed Modified Plan does not prohibit DHHS from exercising its right to intercept tax refunds.  A hearing on the Motion was held on January 14, 2011.  At the hearing, the parties argued over (1) whether in order to be approved, the Proposed Modified Plan must contain a provision allowing DHHS to intercept tax refunds and (2) if the Proposed Modified Plan does not, can DHHS intercept the tax refunds anyway.  The Court took the matter under advisement.

### III. DISCUSSION

In a chapter 13 case, creditors are ordinarily prevented from collecting prepetition debt by the automatic stay.  In the enforcement of support obligations, Congress has exempted from the  automatic stay the interception of tax refunds under applicable state or federal laws.  11 U.S.C. § 362(b)(2)(F).  The parties do not dispute that the interception of tax refunds in this case is not stayed under the provisions of § 362.  Rather, the question is what effect, if any, the confirmation of a chapter 13 plan has on the ability of a state to intercept tax refunds on account of a prepetition child support arrearage.

**A.  The Automatic Stay**

Upon the filing of a bankruptcy petition, the Bankruptcy Code imposes an "automatic stay" on any acts to collect debt that arose before the commencement of the case.  11 U.S.C. § 362(a)(6).  The automatic stay "provides 'breathing room' for the debtor and the bankruptcy court to institute an organized repayment plan and allows for the equitable disbursement of estate property among creditors."  In re Gellington, 363 B.R. 497, 500 (Bankr. N.D. Tex. 2007).  Despite the importance of the automatic stay, Congress has enacted several exceptions

enumerated in § 362(b).  In re 229 Main St. Ltd. P'ship, 262 F.3d 1, 3 (1st Cir. 2001).  The enactment of the Bankruptcy Abuse and Prevention Act of 2005 ("BAPCPA") further narrowed the scope of the automatic stay by broadening the exceptions.  Gellington, 363 B.R. at 501.  Prior to BAPCPA, an exception to the automatic stay provided that creditors who were owed prepetition domestic support obligations[1] could only pursue assets that were not property of the estate.  11 U.S.C. § 362(b)(2)(B).   BAPCPA added § 362(b)(2)(F) which allows creditors to intercept tax refunds, "as specified in section 464 and 466(a)(3) of the Social Security Act or under an analogous state law," even where the tax refund is property of the estate.  Because of the exception added by BAPCPA, it would not be a violation of the automatic stay for DHHS to intercept the Debtor's tax refund to pay either a prepetition or postpetition child support arrearage.  The Debtor conceded that DHHS's interception of the Debtor's tax refunds to satisfy delinquent child support obligations was the sort of action addressed by § 362(b)(2)(F).  Although it is clear that the automatic stay did not apply to DHHS, it is not clear whether the interception of tax refunds are within the boundaries of the Modified Plan.

**B.  The Plan**

  **i.  Confirmation of the Plan**

Confirmation of a chapter 13 plan is done through a rigid application of statutory requirements.  "A bankruptcy court must confirm a Chapter 13 Plan if the plan meets each of the . . . the requirements set forth in 11 U.S.C. § 1325(a) and the debtor proposes payments which meet the requirements of 11 U.S.C. § 1325(b)."  In re Young, 237 B.R. 791, 797 (B.A.P. 10th

---

[1] See 11 U.S.C. § 101(14A).

Cir. 1999); see In re Estus, 695 F.2d 311, 314 (8th Cir. 1982), superseded by statute on other grounds, 11 U.S.C. §§ 1325(b)(1)(B) and (b)(2).  Also, creditor approval is not necessary for plan confirmation.  See Estus, 695 F.2d at 414 n.4 (noting that under chapter 13 of the Bankruptcy Reform Act of 1978, a majority of unsecured creditors no longer had to approve the debtor's plan for confirmation).  Since the Bankruptcy Code was enacted in 1978, additional confirmation requirements have been added to chapter 13.  In 1994, Congress made it mandatory for a plan to provide for full payment of all claims entitled to priority under 11 U.S.C. § 507.  11 U.S.C. § 1322(a)(2); In re Jacobson, 231 B.R. 763, 765 (Bankr. D. Ariz. 1999).  Moreover, 11 U.S.C. § 1325(a)(1) states that a plan must comply with all of the provisions of chapter 13 and title 11 to be confirmed.  Hence, for a plan to be confirmed, it must adhere to § 1322(a)(2).  Domestic support obligations are entitled to first priority under § 507(a)(1)(A) and (B).  Therefore, a chapter 13 plan must provide for payment in full of domestic support obligations.  11 U.S.C. § 1322(a)(2).  Finally, a debtor may modify a plan anytime after confirmation but before completion of payments.  11 U.S.C. § 1329(a).  Any such modification must comply with the provisions of §§ 1322(a) and 1325(a) to be approved.  11 U.S.C. § 1329(b).

     In the present case, DHHS's claim is for a domestic support obligation.  The Plan provided for full payment of the claim and was confirmed without objection.  Afterwards, the Debtor moved to modify the Plan to remove DHHS's right to intercept tax refunds but still pay its claim in full.  The modification was granted without objection.  In response to the modification order, DHHS filed a motion to reconsider.  DHHS's motion was denied as moot because DHHS argued that it had the right to intercept tax refunds regardless of the provisions in a confirmed plan.  DHHS also argued that the Modified Plan deprived it of the right to intercept

tax refunds under § 362(b)(2)(F).  According to DHHS, the Modified Plan was in contradiction of the Bankruptcy Code, and, therefore, modification should have been denied under § 1325(a). Now, DHHS makes the same argument in its response to the Motion and the Proposed Modified Plan.  DHHS essentially seeks to turn an exception to the automatic stay into a requirement for plan confirmation.  The Court cannot accept such a proposition.  Consequently, the Motion can be granted and the Proposed Modified Plan can be approved without a provision allowing DHHS to intercept tax refunds.

### ii. Effect of the Confirmed Plan

Once a bankruptcy plan is confirmed, the debtor and each creditor are bound by its terms. In re Rodriguez, 367 F. App'x 25, 28 (11th Cir. 2010); In re Dagen, 386 B.R. 777, 783 (Bankr. D. Colo. 2008); Gellington, 363 B.R. at 502.  Section 1327(a) addresses the effect of a confirmed plan: "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."  Once a plan is confirmed, a creditor's rights and interests are defined within the boundaries of the plan and proceedings that are inconsistent with the confirmed plan are improper.  Rodriguez, 367 F. App'x. at 28 (noting that after confirmation, the plan and confirmation order control); Dagen, 386 B.R. at 783 ("[T]he ability of a support creditor to continue to collect a prepetition debt is only limited to the extent that the confirmed plan abrogates these rights."); In re Sanders, 243 B.R. 326, 331 (Bankr. N.D. Ohio 2000) ("Confirmation is the bright line in the life of Chapter 13 case at which all important rights of creditors and responsibilities of the debtor are defined and after which all rights and remedies must be determined with reference to the plan.") (quoting Keith M. Lundin, Chapter 13

Bankruptcy, § 6.9, 6-4 and 6-5 (2d ed. 1997)).  Therefore, a creditor may not collect a prepetition debt by means that are outside the terms of a confirmed chapter 13 plan.

Moreover, a creditor may not circumvent the terms of the confirmed plan because its actions are exempted from the automatic stay.  In re Worland, No. 08-2148-AJM-13, 2009 WL 1707512, at *2 (Bankr. S.D. Ind. June 16, 2009) (holding a child support creditor did not violate the automatic stay but did violate the confirmation order where it intercepted the debtor's tax refund); Dagen, 386 B.R. at 783 (explaining that it was the confirmed plan, not the automatic stay, that forbade collection of prepetition debt); Gellington, 363 B.R. at 502 (holding that 11 U.S.C. § 362(b)(2)(C) did not authorize the state to garnish the debtor's wages where the claim was being paid in monthly installments under the plan).  In fact, the court in Rodriguez explained that because § 1327(a) forbids collection of any debt not confirmed by the plan, the § 362(b)(2) exception "has little or no practical effect in Chapter 13 situations."  Rodriguez, 367 F. App'x. at 28 (quoting Carver v. Carver, 954 F.2d 1573, 1577 (11th Cir. 1992)).  In the event a creditor violates the terms of the confirmation order, the bankruptcy court may impose sanctions.  In re Fatsis, 396 B.R. 579, 583 (Bankr. D. Mass. 2008).

Prior to confirmation of a plan, the automatic stay did not prevent DHHS from intercepting tax refunds under the exception in § 362(b)(2)(F).  DHHS did not breach the terms of the original confirmation order when it intercepted the Debtor's tax refunds in April and November of 2010 because the confirmed plan in effect at the time permitted the interception of tax refunds.  However, once the order approving the Modified Plan became final on December 15, 2010, DHHS was prohibited from intercepting tax refunds to satisfy the Debtor's prepetition domestic support obligation because the Modified Plan provided that DHHS's prepetition claim

would be paid through plan payments.  DHHS was bound by the provisions of the Modified Plan and was obligated to accept distributions from the chapter 13 trustee in satisfaction of its allowed prepetition domestic support claim.  Dagen, 386 B.R. at 783; Gellington, 363 B.R. at 502.  The Proposed Modified Plan satisfies DHHS's claim in the same manner.  Therefore under the terms of the Proposed Modified Plan, DHHS is subject to the same limitations.

At the hearing to consider the Proposed Modified Plan, counsel for DHHS argued that the enactment of § 362(b)(2)(F) in BAPCPA was evidence that Congress wanted to make enforcement of child support unimpeded by the bankruptcy process.  The Court does not agree with DHHS that Congress intended to go as far as granting support creditors complete immunity from the effects of the Bankruptcy Code.  The framework outlined by the Court in this case is in line with Congress's legislative intent regarding the strong policy of fully satisfying domestic support obligations.  When a debtor files for chapter 13, a support creditor, as described in § 362(b)(2)(F), may intercept tax refunds before the plan is confirmed since such acts are exempt from the automatic stay.  A support creditor may even intercept tax refunds to recover arrears on postpetition domestic support obligations.  However, once a plan is confirmed, the support creditor will receive payments that will fully satisfy its prepetition claim because that is a requirement for confirmation.  See 11 U.S.C. § 1322(a)(2); Rodriguez, 367 Fed. App'x at 28 (noting that since the 1994 amendments mandated chapter 13 plans to pay support obligations in full, § 362(b)(2)(B) was rendered somewhat superfluous).  Consequently, DHHS may not intercept tax refunds to pay its prepetition claim according to the Proposed Modified Plan.

**III. CONCLUSION**

       The Proposed Modified Plan provides for full payment of DHHS's claim as required by § 1322(a)(2) of the Bankruptcy Code.  Nothing in §§ 1322 or 1325 requires a chapter 13 plan to include a provision permitting a support creditor to intercept tax refunds as described in § 362(b)(2)(F).  Accordingly, the Motion shall be granted and the Proposed Modified Plan shall be approved.  For the reasons set forth above, DHHS may not intercept the Debtor's tax refunds in order to satisfy the Debtor's prepetition support obligation because such action would violate the order approving the Proposed Modified Plan.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

       ENTERED at Manchester, New Hampshire.

Date:   April 22, 2011                 <u>/s/ J. Michael Deasy</u>
                                            J. Michael Deasy
                                            Bankruptcy Judge